Argued and submitted June 21, order of Court of Appeals reversed; case remanded for further proceedings August 18, 2005

## DICKEY A. RICHARDS,
*Petitioner on Review,*

*v.*

## BOARD OF PAROLE
## AND POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A124095; SC S51773)

118 P3d 261

Walter J. Ledesma, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the briefs were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Stacey RJ Guise, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

DE MUNIZ, J.

**DE MUNIZ, J.**

This case requires this court to determine whether petitioner, an inmate, was "adversely affected or aggrieved" by an order of the Board of Parole and Post-Prison Supervision (board). Petitioner initially sought administrative review of a board order that delayed his release date for two years and required that he undergo a psychological evaluation before release. In response, the board entered a new order that changed petitioner's projected release date to one year, but retained the requirement that petitioner undergo a psychological evaluation. Petitioner again sought administrative review, arguing that he should not have to undergo a psychological evaluation and that the board should release him in a year without such an evaluation. The board rejected that argument. Petitioner then sought judicial review in the Court of Appeals. The board moved to dismiss, arguing that the board's order did not adversely affectd or aggrieve petitioner in the manner necessary to establish appellate jurisdiction. The Court of Appeals agreed with the board and dismissed the petition for judicial review by order for lack of jurisdiction. We allowed petitioner's petition for review and now conclude that the Court of Appeals erred in dismissing petitioner's petition.

The pertinent procedural facts are undisputed. Petitioner is imprisoned for crimes that he committed in 1980. In early 2003, petitioner underwent a psychological examination. Following that examination, the board concluded in Board Action Form (BAF) 10 that petitioner suffered from a present severe emotional disturbance that constitutes a danger to the health or safety of the community. The board, acting in that instance through two of its members, deferred petitioner's release date for 24 months.

Petitioner requested administrative review of BAF 10 and advanced six arguments, one of which was that a board panel made up of only two members could only postpone petitioner's release date for one year. *See former* OAR

255-60-010(2) (1980).[1] In particular, petitioner stated that "[t]he Board postponed me (2) years, but could only postpone me (1) year as I seen [*sic*] a panel."

The board responded with Administration Review Response (ARR) 6 and BAF 11. In ARR 6, the board conceded that, applying the administrative rule that was in effect when petitioner committed his crimes, petitioner was correct in his understanding of *former* OAR 255-60-101(2) (1980) that a two-member panel could not extend a release date more than 12 months. In BAF 11, the board stated that petitioner's projected parole release date would be deferred 12 months, rather than 24 months, until October 3, 2004.

Petitioner sought administrative review of BAF 11, arguing that the board had failed to comply with OAR 255-60-010(2) (1980) in BAF 11. As petitioner stated his argument:

"The Rule that applies to my case, (Division 60, specifically [*former* OAR] 255-060-010(2) (1980)) states that the Board members I appeared before, constituting a panel, may order postponement of the scheduled release date (if a finding of present emotional disturbance etc.) '*Not to exceed one year.*' This language is '*specific*' and mandates that my release date of 10/3/04 be *a fixed date*—no additional postponements or extensions shall be administered. My *prison term* should expire on *10/3/04.*"

(Emphasis in original.)

The board responded in the aforementioned ARR 6, discussing petitioner's argument at some length:

"You allege that [*former* OAR 255-60-010 (1980)] indicates that the board is limited to postponing your scheduled parole release date for 12 months and afterwards, [and] it is required to release you onto parole supervision. You further

---

[1] *Former* OAR 255-60-010(2) (1980) provided:

"Following the hearing, a panel may order postponement of the scheduled release of a prisoner found to have a present emotional disturbance which the Board finds poses a threat to the health or safety of the community until after a specified future date not to exceed one year or until the prisoner or institution presents evidence that the emotional disturbance is over or in remission."

Because it is unnecessary to our disposition of this proceeding, we express no opinion respecting the merits of petitioner's substantive arguments in that regard.

allege that the board cannot require that you participate in a psychological evaluation after it has postponed your scheduled parole release date for 12 months. You are incorrect on both points. Pursuant to ORS 144.125, in effect at the time you committed your crimes, the board, after finding that an offender suffered from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community could defer the offender's scheduled parole release date to a specified future date. * * * There is nothing in either the statute or the rule that indicates an offender is to be released onto parole supervision after a 24-month postponement or a 12-month postponement of the scheduled parole release date. Furthermore, pursuant to ORS 144.223, in effect at the time you committed your crimes, the board could require any prisoner being considered for parole to participate in a psychological evaluation. Finally, the board found that you were suffering from a present severe emotional disturbance such as to constitute a danger to the health or safety of the community after conducting an exit interview with you. After making this finding, the board is authorized to postpone the scheduled parole release date of an offender. Pursuant to rule and statute, the board must make this finding in order to defer an offender's scheduled parole release date. Only in the absence of such a finding is an offender entitled to release onto parole supervision after an exit interview. Your interpretation of [*former*] OAR 255-60-010 [(1980)] is illogical and if true would render the entire parole process superfluous as well as being unconstitutional. Therefore, your allegation has no merit. The board did not violate any rules, policies, statutes, or constitutions when it made its decision in your case."

The board then informed petitioner that he could seek judicial review of BAF 11, under ORS 144.335, by filing a petition with the Court of Appeals within 60 days.

Petitioner filed a timely petition for review of BAF 11, stating that he had exhausted his administrative remedies via ARR 6. He also asserted that he was adversely affected or aggrieved by BAF 11.

The board filed a motion to dismiss, arguing that the Court of Appeals lacked jurisdiction because petitioner was not "adversely affected or aggrieved" under ORS 144.335 because BAF 11 had granted petitioner the relief that he had

requested in changing his projected release date to 12 months from 24 months. Petitioner responded that, while the board indeed had granted him partial relief, it had not granted him all the relief that he had sought. He argued:

> "The unambiguous text of the rule states that the board was authorized to perform only one action[:] defer a release date for up to one year. The text does not support a reading that the board was authorized to set another hearing with a new invasive psychological report from a psychologist hired by the board with the possibility of another deferral. Under petitioner's reading of the rule, any time in prison after one year adversely affects petitioner."

Petitioner further contended that "[t]he exercise of nonexistent authority by the board to postpone petitioner's release date and subject him to a subsequent hearing with another privacy invading psychological evaluation adversely affects or aggrieves petitioner."

The Court of Appeals dismissed the petition for judicial review by order, stating simply that "petitioner is not adversely affected or aggrieved by the challenged order." As noted, we allowed petitioner's ensuing petition for review.

■ Legislation, rather than common law, defines appellate jurisdiction in Oregon. *See State v. Snyder*, 337 Or 410, 416, 97 P3d 1181 (2004) (right to appeal is statutory); *Benton County v. Friends of Benton County*, 294 Or 79, 82, 653 P2d 1249 (1982) (common law does not provide jurisdictional authority). We begin with the pertinent statute describing the requirements for appellate jurisdiction over board orders. ORS 144.335(1) provides:

> "A person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

> "(a)  The person is adversely affected or aggrieved by a final order of the board; and

> "(b)  The person has exhausted administrative review as provided by board rule."

Although this court has not scrutinized the meaning of "adversely affected or aggrieved" as that phrase is used in

ORS 144.335, the term is one of art when used in connection with judicial review of a final order.[2] This court's most comprehensive discussion of the meaning of the phrase appears in *People for Ethical Treatment v. Inst. Animal Care*, 312 Or 95, 817 P2d 1299 (1991) ("*PETA*"), a case on which both parties in this dispute rely:

> "From the legislative history and from our prior interpretations of 'aggrieved' person, we conclude that a person is 'aggrieved' under ORS 183.480(1) if the person shows one or more of the following factors: (1) the person has suffered an injury to a substantial interest resulting directly from the challenged governmental action; (2) the person seeks to further an interest that the legislature expressly wished to have considered; or (3) the person has such a personal stake in the outcome of the controversy as to assure concrete adverseness to the proceeding. The legislature has not granted standing under ORS 183.480(1) to those persons who merely are 'dissatisfied with the agency's order,' or who have only an 'abstract interest * * * in the question presented,' or who are mere bystanders."

312 Or at 101-02 (citations omitted).

*PETA* involved a third party that wished to object to the treatment of animals in a university laboratory setting. Accordingly, the court established a broad theoretical understanding of how third parties might be "aggrieved" for purposes of seeking appellate review.

Here, unlike in *PETA*, petitioner argues that he did not obtain the relief that he had sought, and that he was entitled to receive, in the administrative review proceeding. That is the ordinary circumstance of most parties who seek judicial review. In such an instance, it is not difficult to determine whether a party is either "adversely affected" or "aggrieved." Nothing is remarkable about the observation that, if a party did not obtain the relief that it had sought before an administrative tribunal, such a party is either

---

[2] ORS 183.480(1), a part of the Oregon Administrative Procedure Act, provides:

"Except as provided in ORS 183.415(5)(b) [regarding an informal disposition of a contested case], any person adversely affected or aggrieved by an order or any party to an agency proceeding is entitled to judicial review of a final order, whether such order is affirmative or negative in form."

"adversely affected" or "aggrieved" by the denial of that relief. *See Snyder*, 337 Or at 417-18 (party aggrieved by Court of Appeals decision in which party did not prevail in the manner in which it had sought to prevail).

█        Here, petitioner sought judicial review of BAF 11. A BAF is an appealable final order of the board under ORS 144.335(1)(a). *Norris v. Board of Parole*, 331 Or 194, 197 & n 2, 13 P3d 104 (2000). Petitioner exhausted administrative review by seeking the reassessment that resulted in ARR 6. *See* OAR 255-080-0005(1) (inmate may request administrative review by sending Administrative Review Request Form to board, explaining how case fits criteria for review listed in OAR 255-080-0010). The remaining issue under ORS 144.335(1) is whether BAF 11 adversely affected or aggrieved petitioner.

In seeking judicial review, petitioner maintained that the board had acted outside its rules and authority in postponing review of petitioner's release date by more than one year and thereby (according to petitioner) had violated *former* OAR 255-60-010(2) (1980). The board granted relief by scheduling review for one year in the future. Petitioner then objected that his OAR 255-60-010(2) argument was broader than merely resetting an earlier date for parole consideration. He clarified his argument that the board had violated *former* OAR 255-60-010(2) (1980) by conditioning future consideration for release on a psychological examination. Although petitioner could have made a clearer argument earlier, perhaps even when he challenged BAF 10, he clarified his argument to the board after it issued BAF 11. Afterwards, the board considered and rejected petitioner's argument in ARR 6. Whatever the merits of petitioner's argument, he did not receive all the relief that he had sought under *former* OAR 255-60-010(2) (1980) when the board entered BAF 11 including the requirement that petitioner undergo another psychological evaluation. We therefore conclude that petitioner was "adversely affected or aggrieved" by BAF 11 for purposes of ORS 144.335(1)(a), and that the Court of Appeals erred in concluding otherwise.

The board offers several arguments in support of its position that petitioner was not adversely affected or

aggrieved by BAF 11. First, the board argues that, because the board had granted petitioner the specific relief that he had requested, petitioner was not adversely affected or aggrieved by BAF 11. As we explained previously, however, petitioner advanced an argument regarding the board's statutory authority to postpone his projected release date. The board understood petitioner's objection to be that the board had no authority to postpone such a date more than 12 months and granted relief. In fact, as petitioner made clear in his subsequent review request, he was making a broader argument about the board's statutory authority under *former* OAR 255-60-010(2) (1980). The board rejected that argument in ARR 6 and, in doing so, adversely affected or aggrieved petitioner by denying him the relief that he had sought.

Second, the board argues that a statement in BAF 11 that did nothing more than "express the board's expectation that it will take certain actions at some point in the future" did not adversely affect or aggrieve petitioner. In other words, the board argues that petitioner's claim will not be ripe until the board takes action—specifically, until it conducts another psychological examination of petitioner. The board, however, *did* take action when it denied petitioner the relief that he had sought. Petitioner, moreover, was required to challenge the board's order, under the board's own rules, within 45 days of the mailing date on the board's final action on the reviewed issue. OAR 255-080-0005(2). He then was required to file a timely petition for review. ORS 144.355(4) (60-day time limit to file petition for review). The board denied future relief to petitioner after evaluating his arguments. In light of the board's refusal to grant relief, petitioner was required to act pursuant to the pertinent administrative and statutory requirements to preserve appellate review of his grievance. Under the statutory time constraints, petitioner could not wait for the board to subject him to another psychological evaluation before challenging the board's order.

Third, the board argues that petitioner should have made his argument challenging the board's authority in response to BAF 10, rather than BAF 11, and that, because he challenged the later order, he is not adversely affected or aggrieved. The board's argument (and, by inference from the

wording of its decision, the Court of Appeals' acceptance of it) reflects a fundamental misunderstanding of the triage function performed by ORS 144.335(1)(a). That provision's requirement that, to obtain judicial review, the person seeking review be "adversely affected or aggrieved" is a requirement of *standing*—it has nothing to do with the legal merits of petitioner's case. That is, the requirement serves only to separate those who are entitled to have their arguments considered on the merits from those who are not so entitled.

Properly understood, the board's argument respecting BAF 10 and BAF 11 is not about whether petitioner met that threshold requirement of ORS 144.335(1)(a). Rather, it is about whether petitioner is entitled to review on the merits in light of his alleged failure to challenge the proper BAF and, having failed to do so, whether the doctrine of issue preclusion bars petitioner from asserting successfully the legal theory that he now wishes to assert.

The board's argument may or may not be correct; we express no opinion concerning it in this case. It is clear, however, that the argument is not about whether petitioner is adversely affected or aggrieved by BAF 11. Patently, he *is* adversely affected: BAF 11 placed him under a disability, that, he asserts, legally cannot be imposed on him. Petitioner's legal theory supporting his claim may or may not succeed, but he has established that he is entitled to have it addressed either directly on the merits or, if the doctrine applies, as a matter of issue preclusion. We hold here only that the Court of Appeals is not excused from addressing petitioner's theory by virtue of the threshold requirement— "adversely affected or aggrieved"—of ORS 144.335(1)(a). Its contrary holding was error and must be reversed.

The order of the Court of Appeals is reversed, and the case is remanded for further proceedings.